UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRENDA B.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 1:20cv439 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d), and for Supplemental Security Income (SSI) under Title XVI of the Act, § 1383(c)(3). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

2

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since July 8, 2017, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: obesity, headaches, adjustment disorder with mixed anxiety and depressed mood, and intermittent explosive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb stairs or ramps, balance, stoop, or crouch; can never kneel, crawl, or climb ladders, ropes, or scaffolds. Work with a moderate level of noise and no concentrated exposure to moving machinery or unprotected heights. Work with an option to sit or stand, changing positions no more frequently than every 30 minutes, while remaining on task. With work that can be learned in 30 days, or less, with simple routine tasks; and with occasional interactions with coworkers, supervisors, and the general public.

6. The claimant is capable of performing past relevant work as a small parts assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 8, 2017, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 17-29).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on August 27, 2021. On October 8, 2021 the defendant

3

filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 4 was the determinative inquiry.

As noted, the ALJ found that Plaintiff has the severe impairments of obesity, headaches, adjustment disorder with mixed anxiety and depressed mood, and intermittent explosive disorder. Plaintiff alleges that she has also been diagnosed with small bowel obstruction, diverticulitis, facial cellulitis, and non-infective gastroenteritis and colitis.

In support of remand, Plaintiff first argues that the ALJ erred by failing to incorporate intermittent explosive disorder into the RFC. The ALJ found that Plaintiff could perform work

that could be learned in thirty days or less with simple routine tasks and only occasional interaction with coworkers supervisors and the public. Although Plaintiff's argument is vague and undeveloped, she appears to be relying on an opinion by consultative examiner Dr. Boen, who diagnosed Plaintiff with intermittent explosive disorder and stated that Plaintiff would have difficulty getting along with coworkers.   The ALJ discussed Dr. Boen's opinion:

In April 2019, the claimant was referred to psychological consultative examiner, Dan Boen, Ph.D., for a mental status examination (Ex. C8F). She reported she had not been on medication for mental or emotional issues (Ex. C8F/2). She noted she had never had outpatient or been hospitalized for mental health counseling. The claimant indicated she had felt sad and depressed, had trouble concentrating and focusing, had been nervous in social situations, and had had anxiety and panic attacks. She stated she felt unusually agitated, irritable, and angry, and when her anger got out of control she would throw something. Yet, she acknowledged she saw, talked, or texted with her family and/or friends daily (Ex. C8F/3). During the mental status examination, the claimant recalled three of the three objects immediately and two of the three objects in five minutes (Ex. C8F/5). She could recall five digits forward and four digits backward. She could do one of the two math calculations and one of the five subtractions of 7s from 100. The claimant could count backwards from 20 by 3s for six of the six subtractions. She correctly answered five of the five informational questions and ten of the ten vocabulary words. She was oriented to time, place, and person. She could handle money. She was responsive to speech and cooperative with the examiner. Her mood and affect were normal. Her behavior was normal and she was not on psychotropic medication. Her thought form was normal as was her consciousness. Her concentration was only mildly below normal. Her immediate recall was normal. Despite her allegations of memory issues, her short-term memory was considered only mildly below normal. Her long-term memory was normal. Her fund of information was normal. Her level of intelligence was normal. The claimant's judgment was also only mildly below normal. Her level of insight was normal. Dr. Boen diagnosed the claimant with adjustment disorder with mixed anxiety and depressed mood and intermittent explosive disorder.

*   *   *

In April 2019, Dr. Boen, the psychological consultative examiner, evaluated the claimant (Ex. C8F). Dr. Boen opined the claimant would have no trouble understanding, remembering, concentrating, staying on task, or getting along with a boss (Ex. C8F/6). The doctor noted the claimant would have difficulty being able to get along with coworkers. The undersigned finds Dr. Boen's opinion somewhat persuasive. He examined the claimant and based his conclusions on clinical observations and the claimant's performance on a mental status examination. Dr. Boen's opinion was supported by the examination findings, specifically the claimant recalled three of the three objects immediately and two of the three objects in five minutes (Ex. C8F/5). She could recall five digits forward and four digits backward. She could do one of the two math

calculations and one of the five subtractions of 7s from 100. The claimant could count backwards from 20 by 3s for six of the six subtractions. Furthermore, Dr. Boen's opinion is consistent with the evidence as a whole, specifically, during the physical examination, the claimant's mood and affect were normal (Ex. C13F/3). Her judgment, orientation, insight, and thought process were normal; despite her allegations of memory issues, her memory was considered normal.

(Tr. 24-25, 26-27)

As the Commissioner notes, the medical evidence fails to support greater limitations in the RFC due to intermittent explosive disorder or any other mental impairment. Most of the evidence in the record speaks to Plaintiff's treatment for physical ailments as opposed to mental health issues. (*See* Tr. 397, 400, 402, 405, 408, 411, 433, 445, 453, 461, 477, 488, 528, 598, 615, 640, 646, 668-69, 676, 681, 693, 699, 732, 737, 748, 752, 756, 759, 770).

As the ALJ pointed out, (Tr. 24-27), Plaintiff often denied psychiatric complaints, including emotional disturbances, (Tr. 397, 400, 405, 408, 411, 435, 580, 600, 615, 756; *see* Tr. 528), and was generally cooperative with normal mood, affect, behavior, judgment, cognition, memory, thought content, and speech, (Tr. 24-27; *see* Tr. 406, 409, 412, 436, 463, 481, 489, 528, 571, 581-82, 600-01, 694, 699, 703-05, 711-12, 733, 737, 744, 749, 753, 757, 761, 773).

The ALJ also noted that Plaintiff's mental health treatment was limited to an anti-depressant medication, (Tr. 678, 742), and that she interacted with friends and family on a daily basis. (Tr. 24; *see* Tr. 703). Plaintiff said that she lived with her husband of thirty-two years, did not experience any notable change in friends during the relevant period, and got along with her neighbors. (Tr. 703).

Conservative treatment, unremarkable objective findings, and Plaintiff's ability to maintain social relationships were proper bases for the ALJ to conclude that Plaintiff could perform simple work involving only occasional social interaction. (Tr. 22). *See Pytlewski v. Saul*,

791 F. App'x 611, 616-17 (7th Cir. 2019) (upholding RFC for simple work with only occasional social interaction based on "treatment notes reflecting 'good cognition, memory, insight/ judgment,' and, most importantly, given Pytlewski's concern regarding his intermittent explosive disorder, 'cooperative behavior'"); *Inman v. Saul*, No. 1:20-cv-00231, 2021 WL 4079293, at *3 (N.D. Ind. Sept. 7, 2021) (finding intermittent explosive disorder did not preclude simple work where the plaintiff still had friends, grocery shopped, remained cooperative during examinations, and took medication to help his anger).

The opinion of Dr. Boen supports the ALJ's conclusion. Dr. Boen opined that Plaintiff would not have trouble understanding what she was asked to do, concentrating, or staying on task. (Tr. 706). He also determined that Plaintiff would have trouble getting along with others, but that she would not have trouble getting along with superiors. (Tr. 706). The ALJ reasonably found Dr. Boen's opinion somewhat persuasive because it was supported by clinical findings and consistent with evidence of normal mood, affect, judgment, orientation, insight, thoughts, and memory. (Tr. 27).

Plaintiff cites symptoms common to people with intermittent explosive disorder to support her claim. However, those symptoms are irrelevant to the extent Plaintiff did not experience them herself. *See* 20 C.F.R. § 404.1529(c) ("[W]e must . . . evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity to work."). Moreover, the ALJ found that Plaintiff's subjective reports were not entirely borne out by the record. (Tr. 23, 25). Plaintiff has waived any challenge to that finding by failing to raise it in her brief. *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998) (issues not raised in initial district court brief are waived).

Somewhat puzzlingly, Plaintiff cites to the United States Depatment of Labor's Occupational Safety and Health Administration's (OSHA's) zero-tolerance policy toward workplace violence. As the Commissioner points out, OSHA is a different agency driven by different objectives and different methodologies. Under the Social Security Act, the ALJ's task was to consider whether Plaintiff could "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Here, the ALJ found that largely unremarkable objective findings, conservative treatment, and Plaintiff's ability to maintain social relationships undermined her claim of disabling mental limitations. (Tr. 24-27). As a reasonable person could accept the evidence the ALJ relied upon as adequate to support her conclusions, there is no basis for remand.

Next, Plaintiff argues that the ALJ erred in relying on VE testimony that Plaintiff could perform her past work. The VE testified that an individual with Plaintiff's limitations could perform her past relevant work as a small parts assembler as that job was generally performed. (Tr. 68-70). The ALJ asked the VE if his testimony was consistent with the Dictionary of Occupational Titles and he unequivocally stated that it was. (Tr. 72). The ALJ then asked Plaintiff's counsel if he had any questions for the vocational expert, which he did. (Tr. 72). But in examining the witness, neither counsel nor the ALJ questioned the expert's foundation or reasoning. (*See* Tr. 67-74). "When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the Dictionary's—for the Dictionary, after all, just records other unexplained

8

conclusions and is not even subject to cross-examination." *Donahue v. Barnhart*, 279 F. 3d 441, 446 (7th Cir. Jan. 2002). *See also Stark v. Astrue*, 278 F. App'x 661, 667 (7th Cir. 2008) ("Stark contends that, even though . . . [the vocational expert] stated that his testimony was consistent with the DOT, the ALJ should have inquired further into specific characteristics of the jobs . . . [the vocational expert] listed. We have never held that ALJs have any such further requirement.").

Plaintiff now belatedly asserts that the VE testimony that her past work was performed with occasional interaction with coworkers is contradicted by the DOT. The DOT for Small Parts Assembler states: "Frequently works at a bench as member of assembly group assembling one or two specific parts and passing unit to another worker" Dictionary of Occupational Titles, § 706.684-22. Plaintiff interprets this to mean that interaction in the job as generally performed is frequent. However, as the Commissioner argues, although a person in that job may frequently work as a member of the assembly group, it is not apparent from the DOT description that interaction within that group is required frequently. *See id.* Accordingly, the ALJ was entitled to rely on the VE's testimony. *See Stark*, 278 F. App'x at 667; *Donahue*, 279 F. 3d at 446; *Ehler*, 2015 WL 5098507, at *2.

In any event, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy. Thus even if the ALJ erred by relying on the VE testimony regarding the Small Parts Assembly job, the error was harmless. *See Coleman v. Astrue*, 269 F. App'x 596, 602 (7th Cir. 2008) ("The ALJ's failure to comply with SSR 00-4p was therefore harmless as, at the very least, a significant number of jobs cited by the ALJ and not inconsistent with the DOT remained available to Coleman.").

Therefore, this Court finds that the ALJ properly found that Plaintiff could perform her

past relevant work as generally performed, and there is no basis for remand on this issue.

Next, Plaintiff argues that the ALJ erred in finding that there were a significant number of jobs in the national economy that Plaintiff could perform. In addition to finding Plaintiff could return to her past relevant work as generally performed, the ALJ found that Plaintiff could perform other jobs – mail sorter, routing clerk, and checker – existing in significant numbers in the national economy. (Tr. 27-29). The ALJ based that finding on VE testimony. (Tr. 28-29). The VE testified that a person with Plaintiff's limitations could perform approximately 25,000 checker positions, approximately 21,500 routing clerk positions, and approximately 27,500 mail sorter positions. (Tr. 68-69). Combined, the VE's testimony was that there were more than 74,000 jobs in the national economy that Plaintiff could perform. (*See* Tr. 68-70). Plaintiff asserts that this is not a "significant number". Recently, however, in *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021), the Seventh Circuit stated that the 30,000 jobs represented by two occupations constituted a significant number. The Seventh Circuit acknowledged that as few as six thousand jobs nationwide has been found to be significant. *Knapp*, 2021 WL 536121, at *5 (citing cases). In the past, the Seventh Circuit has stated that "[a]s few as 174 jobs has been held to be significant, and it appears to be well-established that 1,000 jobs is a significant number." *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (internal citations omitted).

Thus, this Court finds that substantial evidence supports the ALJ's step five finding and there is no basis for remand on this issue.

Next, Plaintiff argues that the ALJ erred by not including handling and fingering limitations in the RFC. Plaintiff points out that she has had carpal tunnel release, tennis elbow

release, and wrist fracture surgery. Plaintiff claims that the evidence supports handling and fingering limitations. However, the ALJ did not find Plaintiff's arm and wrist problems to be severe impairments. In making that finding, the ALJ stated that Plaintiff's other medically determinable impairments revealed "only slight abnormalities having such minimal effects that they would not be expected to interfere with the ability to work, irrespective of age, education, or work experience and are therefore, non-severe." (Tr. 28). The ALJ also indicated that "special attention was given to the duration and frequency of medical conditions for which the claimant sought treatment." (Tr. 18). Plaintiff's failure to directly challenge that finding constitutes waiver. *See Wright*, 139 F.3d at 553.

Moreover, the ALJ explicitly stated that she considered all of Plaintiff's medically determinable impairments, including those that are not severe, when assessing Plaintiff's RFC. (Tr. 18). The ALJ specifically acknowledged that Plaintiff stated she had difficulty reaching and using her hands. (Tr. 23). The ALJ also acknowledged that Plaintiff told medical consultative examiner Dr. Kamineni that she could not tie her shoes, button, or pick up a coin. (Tr. 24). Nevertheless, the ALJ found that "objective findings fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (Tr. 23).

In fact, the record is largely devoid of any evidence to support the contention that Plaintiff required handling or fingering limitations. Plaintiff testified that she had not had issues with her wrist in the two years preceding the April 2020 hearing, (Tr. 65), and most evidence of record pertains to treatment or evaluation for unrelated conditions. (*See* Tr. 397, 400, 405, 408, 411, 433, 445, 453, 461, 477, 488, 528, 570, 578, 598, 615, 640, 646, 668, 677, 681, 699, 702-03, 732, 741, 748, 752, 756, 758-59, 770).

11

As Plaintiff acknowledges, there were only two occasions during the relevant three-year period in which she presented for treatment of her left wrist, (Tr. 402, 737). In October 2018, Plaintiff indicated she had experienced left wrist pain with giving way, numbness, tingling, and weakness for six years. (Tr. 402). Objectively, however, she exhibited normal sensation, normal motor function, 2+ pulses, no tenderness to palpation, good perfusion to all digits, and no instability. (Tr. 403).

A year later, in October 2019, Plaintiff reportedly hurt her wrist after tripping and falling into a wall. (Tr. 737). She said the initial swelling had resolved, ice helped, and she was able to use her wrist and arm appropriately without change in range of motion. (Tr. 737). Objectively, Plaintiff displayed no swelling and normal range of motion. (Tr. 737). She could make a fist and flex, extend, and rotate her left wrist without difficulty. (Tr. 737).

Plaintiff points to her function report and her subjective testimony which she claims supports handling and fingering limitations. (*See* Tr. 64, 287). However, subjective statements alone do not establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1521, 404.1529(a); SSR 16-3p, 2017 WL 5180304, at *2. Further, the ALJ found that the evidence did not entirely substantiate Plaintiff's subjective allegations. (Tr. 23, 25). Plaintiff did not challenge that finding, and has waived the same. *See Wright*, 139 F.3d at 553.

Contrary to Plaintiff's contention, *Hoskins v. Berryhill*, No. 1:18-cv-0023, 2018 WL 5262939 (N.D. Ind. Oct. 23, 2018), is distinguishable from the present case. There, the ALJ found that the plaintiff's severe impairments included "bilateral hand numbness with some paresthesias most consistent with carpal tunnel syndrome," "arthritis," and "neuropathy of the bilateral upper extremities." *Hoskins*, 2018 WL 5262939, at *2. Here, the ALJ found no severe impairments

12

concerning use of the upper extremities. (Tr. 17). The plaintiff in *Hoskins* also exhibited positive Phalen's signs, neuropathy, and neuritis, and it was undisputed that he experienced at least some problems with handling and fingering. *Id*. at *4. As noted above, the objective evidence here does not support that Plaintiff experienced any ongoing handling and fingering limitations. Thus Plaintiff's reliance on *Hoskins* is misplaced. This Court finds no error in the ALJ's determination that no handling or fingering limitations were supported by the record, and there is no basis for remand on this issue.

Lastly, Plaintiff argues that the ALJ's finding that Plaintiff can do light work is not supported by substantial evidence. Relying on Dr. Kamineni's "Medical Source Statement" Plaintiff contends that due to a problem with her left knee making her unable to squat she is unable to do light work. In her decision, the ALJ acknowledged Plaintiff's alleged left knee issues, but noted Plaintiff stopped taking pain medications eleven weeks after surgery and was "released with 'no restrictions and activity as tolerated'" three months post-surgery. (Tr. 18 (quoting Tr. 406); *see also* Tr. 497). Records from that time indicate that Plaintiff's fracture was healing well and that her hardware was in a good position. (Tr. 406). Plaintiff was directed to only follow up as needed for orthopedic care, (Tr. 407), yet there is no indication she ever did, despite seeking fairly routine treatment for various unrelated issues, (*see* Tr. 668, 699, 732, 737, 741, 743, 752, 748, 756, 758-59, 770). The ALJ also pointed out that subsequent records show Plaintiff generally exhibited normal gait. (Tr. 18; *see* Tr. 116, 708, 711, 733, 744, 749, 753, 756).

The Commissioner argues that, as the ALJ found, Plaintiff's condition had improved enough after surgery that she did not require ongoing treatment. (*See* Tr. 18). When discussing Plaintiff's alleged ailments at the hearing, the ALJ asked her if she had any upcoming medical

13

appointments. (Tr. 60). Aside from an anticipated colonoscopy, Plaintiff testified, "Not yet. I just go when something goes wrong." (Tr. 60). This is consistent with evidence showing she freely presented to the emergency department when she had complaints. (*See* Tr. 433, 445, 453, 461, 477, 488, 493, 570, 578, 598, 615, 640, 646, 759, 770).

The Commissioner also contends that, based on evidence of Plaintiff's post-surgery progress, the ALJ properly found that her knee impairment did not meet the twelve-month duration requirement. *See* 42 U.S.C. § 423(d)(1)(A); *see also Herr v. Sullivan*, 912 F.2d 178, 182 (7th Cir. 1990 (holding the claimant did not meet the twelve-month durational requirement based on evidence that plaintiff's recovery progress occurred within several months of brain surgery).

In any event, the ALJ expressly stated that "limitations and restrictions are contained in the claimant's Residual Functional Capacity assessment to accommodate" her knee complaints. (Tr. 18). The ALJ limited Plaintiff to light work with additional restrictions that included: occasionally climb stairs or ramps, balance, stoop, or crouch; never kneel, crawl, or climb ladders, ropes, or scaffolds; work with a moderate level of noise and no concentrated exposure to moving machinery or unprotected heights; and work with an option to sit or stand, changing positions no more frequently than every thirty minutes, while remaining on task. (Tr. 22).

Dr. Kamineni opined that Plaintiff could not carry twenty pounds short/long distances or lift ten pounds over her head at one time. (Tr. 712). Plaintiff told Dr. Kamineni that she could not sit for ten minutes or stand for ten minutes, and she could walk zero blocks before needing to rest due to back pain. (Tr. 712).

Objectively, Plaintiff was cooperative with no gross motor focal deficits, intact recent and remote memory, and normal attention span. (Tr. 711-12). She had 5/5 bilateral grip strength with

14

the ability to perform fine and gross movements on a sustained basis, and could button, zip, and pick up coins. (Tr. 712). Though she purportedly could not squat due to knee pain, her straight leg raising tests were negative, and she displayed no edema. (Tr. 712). She also exhibited stable gait with an assistive device, 5/5 muscle strength in her upper and lower extremities, normal tandem walk, normal heel/toe walk, and normal range of motion. (Tr. 712).

The ALJ found Dr. Kamineni's opinion unpersuasive. (Tr. 26). The ALJ noted that Dr. Kamineni's opinion was not completely supported by his own examination findings. (Tr. 26). As the ALJ noted, Plaintiff was not on medication or treating with a specialist, and her physical examination was unremarkable. (Tr. 26). Additionally, the ALJ found that Dr. Kamineni's conclusions were inconsistent with other evidence. (Tr. 26).

Plaintiff claims that the ALJ mischaracterized Dr. Kamineni's assessment by indicating the "claimant alleged she was unable to squat due to knee pain," (Tr. 24). Dr. Kamineni's opinion cites no objective findings to support that Plaintiff could not squat (*se*e Tr. 711-12), and Plaintiff's physical examination was unremarkable.

Plaintiff contends that her subjective reports were genuine because Dr. Kamineni noted she was cooperative. As the Seventh Circuit has held, "RFC determinations are inherently intertwined with matters of credibility, and we generally defer to an ALJ's credibility finding unless it is 'patently wrong.'" *Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011). Again, the ALJ discounted Plaintiff's subjective reports as not entirely supported, (Tr. 23, 25), and Plaintiff failed to challenge that finding, *see Wright v. United States*, 139 F.3d at 553. The ALJ did not mischaracterize or improperly reject Dr. Kamineni's opinion. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) ("On the other hand, evidence of Mr. Diaz's ability to walk and stand

15

was largely based on Mr. Diaz's own statements. The ALJ was entitled to make a credibility determination and conclude that the extent of Mr. Diaz's impairment was exaggerated.").

As substantial evidence supports the ALJ's finding that Plaintiff could perform a reduced range of light work, there is no basis for remand on this issue.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: January 7, 2022.

                                              s/ William C. Lee
                                              William C. Lee, Judge
                                              United States District Court